IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3112-FL

| | |
|---|---|
| MICHAEL HUNT, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| ROBESON COUNTY, et al., | ) |
| Defendants. | ) |

Plaintiff filed this action pursuant to 42 U.S.C. § 1983. This matter comes before the court on the motion to dismiss (DE # 14) pursuant to Federal Rules of Civil Procedure 12(b)(5) and (6) of defendants Enid Begay ("Begay"), Tammy Britt ("Britt"), Terry Harris ("Harris"), Robeson County, Kenneth Sealey ("Sealey"), and Western Surety Company ("defendants"). The matter is ripe for adjudication. For the following reasons, the court grants in part and denies in part defendants' motion.

## STATEMENT OF THE CASE

On May 7, 2010, plaintiff filed this action in the Robeson County Superior Court. Plaintiff alleges that Begay, Britt, Sealey, Terry Martin ("Martin"), Harris, and the John Doe defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiff also alleges a supervisor liability claim against Sealey, Harris, and Martin. Finally, plaintiff alleges that Robeson County, Sealey, Harris, Martin, Begay, Britt, and Western Surety acted with negligence in providing plaintiff medical care.

On June 28, 2010, defendants removed this case to federal court pursuant to 28 U.S.C. § 1441 on the grounds that the action states a federal question.

On July 27, 2010, defendants filed a motion to dismiss, arguing that plaintiff's complaint is time-barred. Plaintiff filed a response on September 27, 2010, and defendants filed a reply brief on October 7, 2010.

## STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, plaintiff makes the following allegations. On April 27, 2007, at approximately 10:25 p.m., plaintiff was taken into custody at the Robeson County Detention Center ("Detention Center") for the charge of failure to appear in court. (Compl. 5.) Plaintiff states that, at approximately 11:05 p.m., he was "taken to jail health services with a history of 131" or human immunodeficiency virus ("HIV"). (Id.) Prison officials then contacted plaintiff's mother and requested that she bring plaintiff's medication to the Detention Center. (Id.) Plaintiff, however, states that he was not given any medication for his HIV until April 30, 2007. (Id. p. 6.)

At some point, plaintiff injured his hand while in his cell, and he began to complain about hand pain on April 30, 2007. (Id.) He states that he continued to complain about his hand pain for several days. (Id.) Plaintiff filled out a form requesting medical services on May 3, 2007 at approximately 9:30 a.m. (Id.) Plaintiff states that his condition deteriorated over the next three hours, prompting "the jailer" to take plaintiff to the nurse on duty. (Id.)

Plaintiff states that, on May 4, 2007, he woke up in worse condition and was experiencing severe pain, and that he complained about his condition to the Detention Center staff. (Id.) Plaintiff states that a member of the Detention Center staff then took a short medical history of plaintiff's

2

hand pain and provided him with pain medication. (Id.) Plaintiff states that he did not receive a medical examination at that time. (Id.) The medical staff did, however, note that plaintiff had a history of infection in his right hand and recommended that he receive an appointment with an orthopedic doctor as soon as possible. (Id.) Plaintiff states that defendants then followed the Detention Center's medical policies and regulations by checking on plaintiff every fifteen (15) minutes. (Id.)

Plaintiff states that over the next two days, he complained about severe pain, but that defendants ignored him. (Id.) Plaintiff states that he complained about his pain to "anyone he had contact with," but that he did not receive medical attention or assistance. (Id.) Plaintiff states that he continued to request sick calls, but that he was not taken to the nurse's station nor was he visited by medical staff. (Id. at pp. 6-7.)

Plaintiff states that, on May 5, 2007, he was in such severe pain that he pretended to pass out on the floor. (Id. at 7.) In response, the medical staff went to plaintiff's cell and provided him with pain medication. (Id.) Plaintiff then was placed on observation for the next twenty-four (24) hours. (Id.) At approximately 12:00 a.m., plaintiff was moved to general population because the Detention Center officials needed the observation room. (Id.) Plaintiff states that he continued to complain about swelling and pain in his right hand for the duration of the weekend, but was not provided treatment or medication. (Id.)

On May 7, 2007, plaintiff asserts that his cell mate wrote a note to the Detention Center medical staff regarding plaintiff's condition. (Id.) The Detention Center's Health Services then contacted Dr. Dixon Gerber at Robeson Orthopedic regarding plaintiff's condition, and plaintiff was transported to Robeson Orthopedic for an appointment later that day. (Id.) Dr. Gerber diagnosed

plaintiff with an infected right hand, and advised the Detention Center that plaintiff needed surgery immediately. (Id.) Plaintiff subsequently was transported back to the Detention Center and released from custody due to the necessity of emergency surgery on his right hand. (Id.)

On May 8, 2007, plaintiff had surgery on his hand. (Id.) He was discharged from the hospital on May 14, 2007. (Id.)

## DISCUSSION

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 1940 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253-55 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949, and Twombly, 550 U.S. at 557).

4

B.  Analysis

   1.  Statute of Limitations

Defendants argue that plaintiff's § 1983 action should be dismissed because it is barred pursuant to the statute of limitations. Although there is no federal statute of limitations for claims brought under 42 U.S.C. § 1983, the relevant state statute governing personal injury claims should be applied. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 280 (1985) ("[section] 1983 claims are best characterized as personal injury actions."), superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383-85 (2004). The appropriate statute of limitations for personal injury claims in North Carolina is found in N.C. Gen. Stat. § 1-52(5), which applies a three-year period of limitations. See National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991). In § 1983 complaints, the cause of action accrues and the statute of limitations begins running "when plaintiff knows or has reason to know of the injury which is the basis of the action." Id. at 1162.

Although the limitations period for claims brought under section 1983 is borrowed from state law, the time for accrual of an action is a question of federal law. Wallace, 549 U.S. at 388; Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). Generally, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Wallace, 549 U.S. at 391. When harm results from a series of acts or omissions, the continuing violation doctrine applies. See Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir. 2001); Green v. Rubenstein, 644 F. Supp. 2d 723, 747 (S.D.W. Va. Mar. 18, 2009) (unpublished). A continuing violation is a "continuous series of events [that] gives rise to a cumulative injury." Heard, 253 F.3d at 320. It occurs when "it would be unreasonable to require or even permit [the plaintiff] to sue

5

separately over every incident of the defendant's unlawful conduct." Id. at 319. "Deliberate indifference to a serious medical need manifested in delay in the provision of medical treatment is a continuing violation which commences when the provider of the medical services has notice of the untreated condition and ends when treatment is provided." Green, 644 F. Supp. 2d at 747 (citing Heard, 253 F.3d at 318)

In this case, plaintiff alleges that he began having sharp pain in his hand on April 30, 2007. Plaintiff states that he complained about his hand pain for several days. Plaintiff states that he requested medical services on May 3, 2007. On May 4, 2007, the Detention Center's medical staff recommended that plaintiff receive an appointment with an orthopedic doctor, as soon as possible. Plaintiff was provided pain medication during this time period. However, the Detention Center's health services did not refer plaintiff to an orthopedic doctor until May 7, 2007. Plaintiff saw Dr. Dixon Gerber at Robeson Orthopedic on that same date, and had surgery on his hand the following day. Based upon the foregoing, the limitations period began to run on May 7, 2007, the last date defendants allegedly acted with deliberate indifference to plaintiff's series medical needs, and the action is not time barred. Thus, defendants' motion to dismiss based upon the running of the statute of limitations is DENIED.

2.   Insufficient Service of Process

Sealey and Harris assert they should be dismissed from this action pursuant to Federal Rule of Civil Procedure 12(b)(5) because plaintiff failed to effectuate proper service of process. This case initially was filed in North Carolina State court. Accordingly, North Carolina state law controls the sufficiency of service of process in this action. See Goodwin v. Furr, 25 F. Supp.2d 713, 717 (M.D.N.C. 1998). North Carolina General Statutes § 162-16 provides the exclusive means to

effectuate service of process upon a sheriff and his deputies. See Mabee v. Onslow County Sheriff's Department, 174 N.C. App. 210, 211, 620 S.E. 2d 307, 308 (2005). In particular, N.C. Gen. Stat. § 162-16 provides:

> Whenever the sheriff may be required to serve or execute any summons, order or judgment, or to do any other act, he shall be bound to do so in like manner as upon process issued to him, and shall be equally liable in all respects for neglect of duty; and if the sheriff be a party, the coroner shall be bound to perform the service, as he is now bound to execute process where the sheriff is a party; and this Chapter relating to sheriffs shall apply to coroners when the sheriff is a party. Sheriffs and coroners may return process by mail. Their liabilities in respect to the execution of process shall be as prescribed by law.
>
> In those counties where the office of coroner has been abolished, or is vacant, and in which process is required to be served or executed on the sheriff, the authority to serve or execute such process shall be vested in the clerk of court; however, the clerk of court is hereby empowered to designate and direct by appropriate order some person to act in his stead to serve or execute the same.

Plaintiff states that he served Sealey via certified mail. Plaintiff asserts that N.C. Gen. Stat. § 1A-1, Rule 4(j)[1] in conjunction with § 162-16 permits a plaintiff to serve a sheriff by certified mail.

---

[1] N.C. Gen. Stat. § 1A-1 Rule 4(j) provides:
Process - Manner of service to exercise personal jurisdiction - In any action commenced in a court of this State having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in G.S. 1-75.4, the manner of service of process within or without the State shall be as follows:
(1) Natural person.–Except as provided in subdivision (2) below, upon a natural person by one of the following:

    a. By delivering a copy of the summons and of the complaint to the natural person or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.

    b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.

    c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering

7

However, North Carolina law provides that "[w]hen a statute prescribes the manner for proper notification, the summons must be issued and served in that manner." Johnson v. City of Raleigh, 98 N.C. App. 147, 149, 389 S.E.2d 849, 851 (1990). The requirements regarding adequate service of process must be strictly construed. Mabee, 174 N.C. App. at 211 (citation omitted). If the prescribed procedures for service are not followed, service is not valid. Id. As stated, § 162-16 provides the exclusive means to effectuate service of process upon a sheriff and his deputies. Id. The procedures for service set forth in § 162-16 were not followed in this action. Thus, plaintiff has failed to effectuate proper service of process on Sealey, and Sealey's motion to dismiss pursuant to Rule 12(b)(5) is GRANTED. Plaintiff's claim against Sealey is DISMISSED without prejudice.

As for Harris, plaintiff argues that § 162-16 is inapplicable because he is a detention officer and not a sheriff's deputy. Plaintiff identifies Harris as the chief jailer for the Robeson County Detention Center. It appears that the positions of deputy sheriff and jailer are separate. See Gowens v. Alamance County, 216 N.C. 107, 3 S.E. 2d 339, 341 (1939). It is not clear from the pleadings whether Harris was a detention officer or a sheriff's deputy. Thus, Harris' motion to dismiss for insufficiency of service of process is DENIED at this time.

---

<div style="margin-left:2em;">

to the addressee.

d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt. As used in this sub-subdivision, "delivery receipt" includes an electronic or facsimile receipt.

e. By mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee.

</div>

8

3. Failure to State a Claim upon which Relief May be Granted

    a. Eighth Amendment/Fourteenth Amendment Deliberate Indifference

Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments[2] of the United States Constitution when they refused to provide him medical care for his injured hand. To state a claim for relief under the Eighth Amendment of the United States Constitution, a plaintiff must establish that a prison official was deliberately indifferent to a serious condition, medical need, or risk of harm. See Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* 'sufficiently serious.'" Strickler, 989 F.2d at 1379. The second prong is subjective; the prisoner must show that "*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" Id. (quotations omitted). Under some circumstances, a significant delay in medical treatment may give rise to a constitutional violation. Webb v. Hamidullah, 281 Fed. Appx. 159, 166-67 (4th Cir. 2008).

---

[2] Plaintiff was a pretrial detainee at the time his alleged claims arose. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment of the United States Constitution. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, as a practical matter, the contours of the Due Process Clause are coextensive with the substantive constitutional principles applied by the Eighth Amendment to convicted inmates. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Accordingly, plaintiff's Fourteenth Amendment Due Process claims will be analyzed under the Eighth Amendment.

However, "[a]n Eighth Amendment violation only occurs . . . if the delay results in some substantial harm to the patient." Id. at 167.

The court finds that plaintiff has sufficiently alleged that he suffered from a series medical need—an infected hand requiring surgery—and satisfies the objective prong of the Eighth Amendment test. As for the subjective prong, plaintiff alleges that he began complaining about his hand pain on April 30, 2007, but that the John Doe detention officers[3] ignored his complaints. Plaintiff further alleges that, on May 4, 2007, he complained to the John Doe detention officers about hand pain, and he was taken to the medical staff. After seeing plaintiff, the medical staff recommended that he receive an appointment with an orthopedic doctor as soon as possible. Plaintiff alleges that he continued to complain of hand pain over the next two days, but that the John Doe detention officers ignored him. Plaintiff states that he was in such pain on May 5, 2007, that he pretended to pass out. Plaintiff then was given pain medication. Moreover, plaintiff specifically states that Begay and Britt failed to follow up with his medical care and ignored his pleas for assistance.

The court finds that these allegations are sufficient to satisfy the subjective prong of the Eighth Amendment test. Denial of treatment because of delay or interference can be sufficient to constitute a violation of the Eighth Amendment. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). Construing the allegations in the complaint in the light most favorable to plaintiff, the court finds that plaintiff has stated a claim for deliberate indifference to his serious medical needs against

---

[3] It is likely that the identity of the John Doe detention officers will be discovered in the course of discovery. Thus, the court allows plaintiff to proceed against the John Doe detention officer defendants at this time. See Schiff v. Kennedy, 691 F.2d 196, 198 (4th Cir. 1982) (finding that if "the true identify of an unnamed party can be discovered through discovery or through intervention of the court," a court should not dismiss the unnamed party from the action.) Failure to properly name the John Doe defendants by the time the discovery period closes will result in dismissal of these defendants from this action without prejudice.

the John Doe defendants, as well as Begay and Britt. Thus, defendants' motion to dismiss plaintiff's Eighth and Fourteenth Amendment claim for deliberate indifference to his serious medical needs is DENIED.

        b.     Supervisor Liability

Begay and Harris allege that plaintiff failed to state claim for supervisor liability against them. Begay and Harris correctly argue that they may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable in § 1983 suits. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009); Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). To the extent plaintiff alleges a claim pursuant to supervisor liability, the United States Supreme Court recently addressed the theory of supervisor liability in the context of a Bivens action. Iqbal, 129 S.Ct. 1949. In Iqbal, the Court held: "Because vicarious liability is inapplicable to . . . § 1983 suits . . . the plaintiff . . . must plead that each Government-official defendant, through his own individual actions, has violated the constitution." Id. at 1948. Mere knowledge is not sufficient to establish personal participation. Id.

Plaintiff alleges that the named supervisors created an official policy and/or an environment that implicitly authorized detention officers and the medical staff to systemically deny inmates proper and adequate medical services. In particular, plaintiff alleges that the supervisory defendants created an environment in which inmates' medical complaints were treated as frivolous or untruthful and that denied inmates' medical services in a timely manner. This is sufficient to state a constitutional claim against the supervisory defendants. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694-95 (1978). Thus, the motion to dismiss Begay and Harris is DENIED.

11

Robeson County also alleges that it should be dismissed from this action because it is not responsible for the actions of Sealey or Harris. In particular, Robeson County alleges that the Office of Sheriff a legal entity separate and distinct from the Board of County Commissioners because the Sheriff is elected by the people, not employed by the county. However, N.C. Gen. Stat. § 153A-225(a), appears to vest the county with policymaking authority over the provision of medical care to county inmates. Based upon the foregoing, Robeson County's motion to dismiss is DENIED at this time.

    c.    Negligence

Defendants move to dismiss plaintiff's state law negligence claim because plaintiff failed to state a claim upon which relief may be granted. In response, plaintiff states that defendants breached their duty under N.C. Gen. Stat. §§ 153A-224 and 225 to provide continuing supervision of inmates health and emergency medical needs.

North Carolina General Statutes § 153A-224 provides:

> (a)   No person may be confined in a local confinement facility unless custodial personnel are present and available to provide continuous supervision in order that custody will be secure and that, in event of emergency, such as fire, illness, assaults by other prisoners, or otherwise, the prisoners can be protected. These personnel shall supervise prisoners closely enough to maintain safe custody and control and to be at all times informed of the prisoners' general health and emergency medical needs.
>
> (b)   In a medical emergency, the custodial personnel shall secure emergency medical care from a licensed physician according to the unit's plan for medical care. If a physician designated in the plan is not available, the personnel shall secure medical services from any licensed physician who is available. The unit operating the facility shall pay the cost of emergency medical services unless the inmate has third-party insurance,

12

in which case the third-party insurer shall be the initial payor and the medical provider shall bill the third-party insurer. The county shall only be liable for costs not reimbursed by the third-party insurer, in which event the county may recover from the inmate the cost of the non-reimbursed medical services.

(c) If a person violates any provision of this section, he is guilty of a Class 1 misdemeanor.

North Carolina General Statutes §153A-225 provides:

(a) Each unit that operates a local confinement facility shall develop a plan for providing medical care for prisoners in the facility. The plan

(1) Shall be designed to protect the health and welfare of the prisoners and to avoid the spread of contagious disease;

(2) Shall provide for medical supervision of prisoners and emergency medical care for prisoners to the extent necessary for their health and welfare;

(3) Shall provide for the detection, examination and treatment of prisoners who are infected with tuberculosis or venereal diseases.

The unit shall develop the plan in consultation with appropriate local officials and organizations, including the sheriff, the county physician, the local or district health director, and the local medical society. The plan must be approved by the local or district health director after consultation with the area mental health, developmental disabilities, and substance abuse authority, if it is adequate to protect the health and welfare of the prisoners. Upon a determination that the plan is adequate to protect the health and welfare of the prisoners, the plan must be adopted by the governing body.

13

Plaintiff alleges in his complaint that he injured his hand in his cell and that he complained of pain for several days and was not allowed to fill out a sick call request form. Plaintiff states that the medical staff recommended on May 4, 2007, that plaintiff see an orthopedic doctor as soon as possible, but he was not seen by an orthopedist until May 7, 2007, despite persistent complaints of pain. The court finds that these allegations are sufficient to state a claim for negligence under N.C. Gen. Stat. §§ 153A-224 and 225, and defendants' motion to dismiss this claim is DENIED.

## CONCLUSION

Based upon the foregoing, defendants' motion to dismiss (DE # 14) is GRANTED in part and DENIED in part. Sealey's motion to dismiss is GRANTED, and plaintiff's claims against Sealey are DISMISSED without prejudice pursuant to Rule 12(b)(5). The remainder of defendants' motion to dismiss is DENIED. As a result, the court re-instates its August 3, 2010 initial order regarding planning and scheduling.

SO ORDERED, this the 23rd day of February, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge